[No. G046209. Fourth Dist., Div. Three. Aug. 13, 2012.]

THE PEOPLE, Plaintiff and Appellant, v.
RUSSELL EUGENE DUNBAR, Defendant and Respondent.

## Counsel

Tony Rackauckas, District Attorney, and Matthew Lockhart, Deputy District Attorney, for Plaintiff and Appellant.

Gerald Miller, under appointment by the Court of Appeal, for Defendant and Respondent.

## Opinion

**BEDSWORTH, Acting P. J.**—Although Penal Code section 471 broadly and unambiguously makes it a crime to forge an entry in "any book of records," the trial court construed the statute as applying only to the forgery of *public* records. Therefore, it dismissed 24 felony counts that were filed against defendant for allegedly falsifying entries into the records of a *private* business. We agree with the People that the statute encompasses defendant's alleged conduct, and therefore we reverse the order dismissing those counts.

### FACTS

Defendant Russell Eugene Dunbar was the office manager and controller at Fields Pianos (Fields) from 2001 to 2005. During that time, his responsibilities included depositing customers' checks into the company's bank account. He was supposed to deposit the full amount of the check into the company's account, but an audit conducted after he left the company indicated he did not always do that. In fact, auditors discovered defendant shorted the company over $6.8 million between 2003 and 2005.

Defendant's modus operandi was fairly simple—indeed, too simple.[1] When a Fields customer made a purchase by check, defendant would deposit the check into his own bank account, instead of Fields's. Then he would write a check from his account for a lesser amount of money and deposit that check into Fields's account. To cover up the scam, he would then alter the bank's deposit slip so it looked like he had deposited the full amount of the customer's check into Fields's account. That way, when the amount reflected on the altered deposit slip was entered into Fields's financial records—by Dunbar—it would appear as though everything was on the level.

When the scheme was discovered, defendant was charged with 48 counts of forgery. (Pen. Code, §§ 470, subd. (d), 471.)[2] Half of the counts alleged a

---

[1] It was discovered as soon as a new controller took over Dunbar's duties.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

violation of section 470, subdivision (d) based on the alteration of the deposit slips, and half alleged a violation of section 471 based on the falsification of Fields's financial records. Following the preliminary hearing, defendant moved to dismiss the latter counts on the basis section 471 does not apply to the forgery of private records. (§ 995.) The trial court granted the motion, prompting this appeal.

## DISCUSSION

The People contend the trial court erred in construing section 471 as applying only to the forgery of a public book of records. We agree.

■　Section 471 provides, "Every person who, with intent to defraud another, makes, forges, or alters any entry in any book of records, or any instrument purporting to be any record or return specified in Section 470, is guilty of forgery." The statute does not limit the term "book of records" in any fashion; rather, it broadly refers to "any" such book. However, relying on extrinsic evidence, defendant contends the term is ambiguous and should be interpreted as applying only to public records. We decline defendant's invitation to rewrite section 471 to include a limitation that does not appear in the text of the statute.

■　"When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls. [Citation.]" (*Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 519 [128 Cal.Rptr.3d 658, 257 P.3d 81]; see *People v. King* (2006) 38 Cal.4th 617, 622 [42 Cal.Rptr.3d 743, 133 P.3d 636].) "[C]ourts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" (*Hartford Fire Ins. Co. v. Macri* (1992) 4 Cal.4th 318, 326 [14 Cal.Rptr.2d 813, 842 P.2d 112].) Nor will they countenance efforts to *create* an ambiguity by reference to extrinsic evidence; outside sources simply do not come into play when the language of a statute is clear and unambiguous. (*Monette-Shaw v. San Francisco Bd. of Supervisors* (2006) 139 Cal.App.4th 1210, 1219 [43 Cal.Rptr.3d 659]; *Pacific Gas & Electric Co. v. Public Utilities Com.* (2000) 85 Cal.App.4th 86, 92 [102 Cal.Rptr.2d 20].)

■　Here, the statutory language in question could hardly be clearer. By its terms, section 471 targets the forgery of "*any* book of records." (§ 471, italics added.) As our Supreme Court has stated, "[t]he word 'any' means without limit and no matter what kind." (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) "From the earliest days of statehood [the court has] interpreted 'any' to be broad, general and all embracing." (*California State Auto. Assn. Inter-Ins. Bureau v. Warwick* (1976)

17 Cal.3d 190, 195 [130 Cal.Rptr. 520, 550 P.2d 1056], citing *Davidson v. Dallas* (1857) 8 Cal. 227, 239; accord, *Department of California Highway Patrol v. Superior Court* (2008) 158 Cal.App.4th 726, 736 [70 Cal.Rptr.3d 280] [use of "the word 'any' . . . in a statute unambiguously reflects a legislative intent for that statute to have a broad application."].)

Because "[t]he word 'any' is not ambiguous" (*Brandon S. v. State of California ex rel. Foster Family Home etc. Ins. Fund* (2009) 174 Cal.App.4th 815, 825 [94 Cal.Rptr.3d 660]), we need not look beyond the language of section 471 to ascertain the meaning of the statute. Use of the word "any" to describe the type of records covered by the statute plainly shows it was intended to apply to the forgery of both public and private books of record. Therefore, that meaning controls, without regard to what extrinsic sources may suggest.[3]

■ Even if section 471 were ambiguous as to whether it applied to public or private records, we would not be inclined to accept the trial court's narrow construction of the statute. Defendant points out that in the early case of *People v. O'Brien* (1892) 96 Cal. 171 [31 P. 45], the Supreme Court referred to section 471 as relating to "false entries in public records." (*People v. O'Brien*, at p. 174.) However, the court did not say the statute *only* pertained to public records. In fact, the court was not called on to interpret the statute at all, since the defendant was not charged with violating it in that particular case. (*Id.* at pp. 173–174 [the defendant was charged with violating §§ 113 and 114 for forging a deed].) Since the court merely mentioned section 471 in passing, and did not offer any substantive analysis of the statute, the *O'Brien* case has no precedential value to us here. (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 127 [92 Cal.Rptr.3d 595, 205 P.3d 1047] [cases are not authority for issues they did not consider or decide].)

■ Defendant also draws our attention to "the annotated code from 1889," which describes section 471 as generally pertaining to "[p]ublic record and documents." Defendant claims the annotation is indicative of the Legislature's intent in passing section 471, but as the Attorney General correctly notes, annotations are not legislative history. Rather, they are simply designed to give readers an overview of the law and provide references to additional sources of information. (See generally *Buss v. Superior Court* (1997) 16 Cal.4th 35, 65 [65 Cal.Rptr.2d 366, 939 P.2d 766] (dis. opn. of Kennard, J.)

---

[3] The only ambiguity ever read into the word "any" had to do with a determination of whether it was a singular or plural description. (See, e.g., *People v. Kirk* (1989) 211 Cal.App.3d 58 [259 Cal.Rptr. 44] [where statute made it a crime to possess "any" sawed-off shotgun, court had to decide whether the defendant should be convicted of one or two violations of the statute where he possessed two such guns at the same time and place].) That situation, however, does not present itself in this case.

[distinguishing annotations "from a statute, constitutional provision, or appellate decision having precedential value"].)

Defendant contends Civil Code section 1207 and a congeries of cases older than the panel compel the conclusion the phrase "book of record" is a term of art applicable only to records in public offices. But Civil Code section 1207 and the cases he relies upon refer to the recording of instruments "affecting the title to real property." Such instruments would, of course, have to be filed in public records to accomplish the notice they are designed to provide. But that neither compels nor suggests the conclusion the Legislature's use of the phrase "any book of records"—a phrase distinguishable from the one he quotes both by addition of the term "any" and the inclusion of an "s" not found in Civil Code section 1207—was meant to limit the crime described in Penal Code section 471 to public records.

■ Lastly, defendant maintains that unless section 471 is interpreted to apply only to public records, it would be redundant of section 470, subdivision (d).[4] However, the two statutes encompass two different types of forgery. Whereas section 470, subdivision (d) makes it a crime to forge the specific items listed therein, section 471 covers the situation where the forgery leads to the corruption of financial records. In this case, the evidence reveals both types of forgery. Defendant not only forged bank deposit slip receipts, justifying the charges under section 470, subdivision (d), he also used those forged receipts to cause false entries to be made into Fields's financial

---

[4] Section 470, subdivision (d) provides, "Every person who, with the intent to defraud, falsely makes, alters, forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine, any of the following items, knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery: any check, bond, bank bill, or note, cashier's check, traveler's check, money order, post note, draft, any controller's warrant for the payment of money at the treasury, county order or warrant, or request for the payment of money, receipt for money or goods, bill of exchange, promissory note, order, or any assignment of any bond, writing obligatory, or other contract for money or other property, contract, due bill for payment of money or property, receipt for money or property, passage ticket, lottery ticket or share purporting to be issued under the California State Lottery Act of 1984, trading stamp, power of attorney, certificate of ownership or other document evidencing ownership of a vehicle or undocumented vessel, or any certificate of any share, right, or interest in the stock of any corporation or association, or the delivery of goods or chattels of any kind, or for the delivery of any instrument of writing, or acquittance, release or discharge of any debt, account, suit, action, demand, or any other thing, real or personal, or any transfer or assurance of money, certificate of shares of stock, goods, chattels, or other property whatever, or any letter of attorney, or other power to receive money, or to receive or transfer certificates of shares of stock or annuities, or to let, lease, dispose of, alien, or convey any goods, chattels, lands, or tenements, or other estate, real or personal, or falsifies the acknowledgment of any notary public, or any notary public who issues an acknowledgment knowing it to be false; or any matter described in subdivision (b) [(relating to the seal or handwriting of another)]."

records, thereby justifying the additional charges under section 471. Because both statutes are apt in this case, the trial court erred in granting defendant's motion to dismiss.

## DISPOSITION

The trial court's order granting defendant's motion to dismiss the 24 counts alleging a violation of section 471 is reversed.

Fybel, J., and Thompson, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 12, 2012, S205388. Kennard, J., was of the opinion that the petition should be granted.