Filed 2/25/13  P. v. Chambers CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046095 |
| v. | (Super. Ct. No. 07HF0829) |
| JOANNA CHAMBERS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Affirmed.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Joanna Chambers was accused of embezzling money from and, as the prosecutor alleged in closing argument, "cooking the books" of a construction company she worked for. She was convicted by jury of one count of grand theft and 67 counts of violating Penal Code section 471, which makes it a crime to make a fraudulent entry in any book of records.[1] She contends the trial court did not properly instruct the jury on the elements of section 471, but we disagree and affirm the judgment.

FACTS

Appellant worked for the Bogart Construction Company from 1994 to 2004. During that time, she held a number of different positions with the company, including bookkeeper and office manager. She was heavily involved in the day-to-day operations of the company and had ready access to its digital financial records. She also had access to the signature stamp of company president Brad Bogart.

In June 2004, the company controller Kim Krick noticed there was a check missing from the company's check registry. Krick contacted the bank and learned the check was written to appellant in the amount of $2,450 and cashed by her on June 7, 2004. In the wake of this discovery, Krick audited the company's financial records and discovered numerous discrepancies in the company's bank accounts. She also discovered that several canceled checks were missing from the filing cabinet where such checks were kept when they came back from the bank.

Krick obtained copies of the missing checks from the bank and noticed they were made out to appellant and either cashed by her or deposited into her personal bank account. However, the company's check ledger did not list appellant as the payee of the missing checks. Rather, the ledger listed other employees or company vendors as the payee.

---

[1] All further statutory references are to the Penal Code.

2

The check ledger was the heart of the prosecution's case. The prosecution argued appellant falsified the ledger entries and destroyed the canceled checks when they came back from the bank so no one would know she was taking the money.

Appellant did not testify at trial. However, in closing argument, her attorney claimed the money appellant took was rightfully hers. Defense counsel also pointed out lots of people had access to the company books, including its president Brad Bogart. Counsel theorized Bogart knew all about the subject checks and was content with appellant using them for salary advances or loans. However, after Krick's audit revealed questionable discrepancies in the company's books, Bogart turned on appellant to protect himself and accused her of embezzlement.

In the end, the jury convicted appellant of one count of grand theft and 67 counts of forgery under section 471. It also found the loss from the theft was over $100,000, there was property damage exceeding $150,000 and appellant's fraudulent conduct involved the taking of more than $100,000. After dismissing four of the forgery counts due to pleading error, the court sentenced appellant to six years in prison.

I

Appellant contends the court erred in failing to instruct the jury that section 471 applies only to the forgery of a *public* book of records. We disagree.

Section 471 provides, "Every person who, with intent to defraud another, makes, forges, or alters any entry in any book of records, or any instrument purporting to be any record or return specified in Section 470, is guilty of forgery." Recently, in *People v. Dunbar* (2012) 209 Cal.App.4th 114, we held that section 471 applies to the forgery of both public and private books of record. Appellant makes no attempt to distinguish *Dunbar*. He simply reasserts all of the very same arguments we found unpersuasive in that case. For the reasons explained in *Dunbar*, we reject appellant's interpretation of section 471. The trial court did not err in failing to instruct the jury the statute applies only to the forgery of a public book of records.

Appellant also faults the trial court for failing to instruct the jury that section 471 requires the making of a *false* entry into a book of records. Since it is not reasonably likely the jury failed to find that appellant's alleged entries were false, we uphold its verdict.

On review, jury instructions "'should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111-1112.) In determining whether instructional error has occurred, we consider the record as a whole, including the specific language challenged and the arguments of counsel. (*People v. Cain* (1995) 10 Cal.4th 1, 36-37; *People v. McPeters* (1992) 2 Cal.4th 1148, 1191.) Unless there is a reasonable likelihood the jury misunderstood the challenged instruction in a manner that violated defendant's rights, we must uphold the court's charge to the jury. (*Ibid.*; *People v. Franco* (2009) 180 Cal.App.4th 713, 720.)

In this case, the trial court instructed the jury in language that tracks the wording of section 471. In relevant part, the court stated that to prove appellant was guilty of violating section 471, the People had to prove she "made, forged or altered an entry in a book of records" and that she did so "with the specific intent to defraud another." Since the statute does not expressly require the alleged entry to be false, we are hard pressed to fault the trial court for failing to include this requirement in its instructions to the jury. (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1014 [the language of a statute is generally an appropriate basis for instructing the jury on its elements].)

In any event, given the way the case played out, it is not reasonably likely appellant was convicted of making entries that were not false. The evidence plainly showed the company's check ledger was made to appear as though the subject checks were used for legitimate business expenses, when in fact they were issued to appellant.

There may have been an issue as to *who* made the fraudulent entries in the ledger, but there was no dispute that the ledger was falsified.

Moreover, during closing argument, the prosecutor emphasized over and over again that this case was about appellant's actions in making *false* entries in the company books with the intent to defraud. Even though the falsity of the entries was not disputed, the prosecutor took pains to explain that appellant's actions in falsifying the company records were the means by which she was able to get away with her scheme for so long. The falsification of the records was a key aspect of the prosecution's case and one that could not have been lost on the jury given everything they were told.

For all these reasons, we uphold the trial court's charge to the jury. It is not reasonably likely that the jury construed the trial court's instructions in a manner that violated appellant's rights by convicting her of making entries in the company books that were not false. We therefore uphold her convictions for violating section 471.

DISPOSITION

The judgment is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.

5