Filed 9/12/14  P. v. Antes CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>JEFFREY CRAIG ANTES,<br><br>     Defendant and Appellant. | G048599<br><br>(Super. Ct. Nos. 13NF0101 & 13NF2051)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James Edward Rogan, Judge.  Affirmed.

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jeffrey Craig Antes of possession of methamphetamine for sale, and Antes admitted serving seven prior prison terms in Orange County Superior Court case number 13NF0101 (No. 13NF0101).  Antes received a five-year term to be served in the Orange County jail.

Antes pled guilty to second degree burglary, identity theft, forgery, possession of a forged instrument with intent to defraud, and possession of a fictitious instrument with intent to defraud, and he admitted the prior serious felony convictions and a prior prison term in Orange County Superior Court case number 13NF2051 (No. 13NF2051).  The trial court sentenced Antes to a four-year term to be served concurrently with the sentence imposed in No. 13NF0101.

Antes's appeal is limited to an issue arising in No. 13NF0101.  He claims the prosecutor committed misconduct during rebuttal argument by postulating a new and erroneous theory of liability, and that his attorney's failure to object and request an admonition amounts to ineffective assistance of counsel.  We reject these assertions and affirm the judgment.

## FACTS

*Prosecution Evidence*

One morning in early January 2013, Anaheim police officers went to a hotel known to be a hot bed of narcotics activities.  During their patrol through the hotel, the officers saw a known probationer, Janet Hutton, coming out from one of the hotel rooms.  While the door was open, the officers noticed another woman, "Ms. Valdivia," sitting at a table.  When Valdivia saw the police officers, she immediately raised her hands.  She quickly lowered her hands in an attempt to cover some hypodermic syringes lying on a table.  The officers also saw Antes, who was also sitting at the table with Valdivia on his lap.  Antes quickly got up, threw a cosmetics bag to the floor, and then ran into the bathroom.

2

Valdivia and Hutton were directed out of the room. Once they were in the hallway, one of the officers went to the bathroom, knocked on the door, and ordered Antes to come out. Antes complied and joined Valdivia and Hutton in the hallway.

The officers searched the room. They found five hypodermic syringes with needles, a spoon, bottled water, and three cell phones on the table. The small cosmetics bag contained two small baggies of a white powdery substance resembling methamphetamine.

During the search, one of the cell phones received several incoming calls and text messages. An officer answered one of the calls. The person on the other end of the call said they had money and needed to make a purchase. The text messages contained statements like "I need to pick up," and "I need to get high."

Although Antes told the officers his name was Richard, a search of his person yielded a wallet containing an identification card for Jeffrey Craig Antes, a baggie containing 1.51 grams of methamphetamine, and $215 in various denominations. The approximately 1.35 grams of white powdery substance found in the cosmetics bag was never tested, but it looked similar to the methamphetamine found in Antes's wallet.

According to Anaheim Police Officer Stephen Craig, who was involved in the arrest and search, the amount of methamphetamine seized indicated sales not personal use. He also believed the packaging of the drug, the presence of multiple cell phones, and the general area where the crime occurred indicated Antes possessed the drug with the intent to sell. Moreover, Craig knew Hutton to be an addict, one who would, in his words, "buys from anybody, anywhere, any time," and it was she who registered for the hotel room.

Craig testified that a low-level narcotics dealer could also be an addict, or be willing to sell narcotics in exchange for many things other than money, including sex or a place to stay. Craig admitted he found no additional packaging, no scales, and no pay-owe sheets in the room, and that these items are typical indicators of sales activity.

3

Craig also acknowledged that there had been three people in the room, and that the officers found three bags of methamphetamine and three cell phones. However, it appeared to him that Hutton and Valdivia were preparing to inject themselves. He also admitted that he did not know who owned or used the cell phone that received the incriminating calls and texts.

*Defense Evidence*

Antes testified that he had been a daily user of methamphetamine for about one year, and that during this time he developed a very high tolerance to the drug. Because of his high tolerance, Antes said he used about 3.5 grams of methamphetamine daily. In fact, he had purchased 3.5 grams of methamphetamine the day before his arrest. He had consumed about 2 grams of that amount the night before. The remaining 1.5 grams was kept in his wallet.

Antes said he knew Hutton and knew she was staying at the hotel. At some point, he decided to take the remaining 1.5 grams of methamphetamine to her room and inject it. He denied knowing there was any methamphetamine in the cosmetics bag. He denied possessing any of the cell phones found in the room, said he brought his own needle, and claimed he did not go into the bathroom to avoid the police. Antes admitted he had multiple prior felony convictions, including convictions for forgery, possession of blank checks with intent to defraud, commercial burglary, and passing bad checks.

*Closing Arguments*

Antes's intent was the sole issue at trial. Relying on Craig's expert testimony, the prosecution argued Antes possessed methamphetamine with the intent to sell it. The defense countered with reliance on the prosecution's burden of proof, highlighting the fact that Craig did not investigate nor determine ownership of the three cell phones. Thus, defense counsel argued mere speculation linked Antes to the cell phone that received the incriminating text messages and call. In short, defense counsel argued Antes went to Hutton's motel room to ingest his own methamphetamine in safety

4

and seclusion. Defense counsel urged the jury to convict Antes of the lesser included offense of simple possession.

During rebuttal, the prosecutor highlighted inconsistencies between Antes's and Craig's testimonies, and argued that some of Antes's testimony sounded implausible at best. The statements Antes now finds objectionable occurred during the following portion of the prosecutor's rebuttal argument:

"How is it that the defendant is the only person who is seen touching or possessing any of the drugs in that room, okay? That's what he was doing in the room and what everybody was doing in that room. [¶] The room belonged to Hutton, was registered to her. Mr. Antes testified to that. And think about what was in the defendant's wallet, what was in Mr. Antes's wallet. No money, although he had cash in his pocket. No credit cards. No debit cards. No driver's license. Just a California I.D. [¶] The person to whom the room was registered, the person who got the hotel room – motel room was Miss Hutton. The only thing Mr. Antes had on him was cash. He needed someone who had a hotel room. [¶] And what is that motel room? Something of very high value to him in his own words. Something that he needed and he was willing to exchange some of his drugs in order to get. Something that [defense counsel] also mentioned, a safe place, a place to avoid police detection in order to get high. [¶] Miss Hutton had something that he wanted. He had something that she wanted. They had a needs-based relationship. [¶] This is possession for sale. Exchanging methamphetamine for something of value; goods, services, something of value. [¶] Mr. Antes admitted that himself. He had spent the night roaming around, doing methamphetamine, which was quite a procedure to inject it the way that he likes to. Behind dumpsters and bathrooms at fast food restaurants, anywhere he could find. Something that he needed to do every hour or so. And when the sun came up, what he needed was a motel room."

5

## DISCUSSION

Antes claims the prosecutor's references to his wanting a motel room "when the sun came up" amounts to the assertion of a new theory of criminal liability and a misstatement of the law. He uses the word "ambush" to describe the effect of the prosecutor's purported error. While Antes acknowledges defense counsel failed to lodge a timely objection to the prosecutor's argument at trial, he alternatively claims defense counsel's failure to object to the prosecutor's argument amounts to ineffective assistance of counsel. We conclude the prosecutor did not engage in misconduct.

"'A prosecutor commits misconduct when his or her conduct either infects the trial with such unfairness as to render the subsequent conviction a denial of due process, or involves deceptive or reprehensible methods employed to persuade the trier of fact.' [Citation.]" (*People v. Maciel* (2013) 57 Cal.4th 482, 541.) Antes's claim fails for two reasons.

First, the prosecutor's interpretation of the facts, i.e., that Antes exchanged drugs for a motel room, is not a misstatement of law or the assertion of a new legal theory. CALCRIM No. 2302 as given to the jury stated, in pertinent part, "Selling, for the purpose of this instruction, means exchanging methamphetamine for money, services, or *anything of value*." (Italics added.) Assuming the prosecutor's interpretation of the facts is the one upon which the jury based its verdict, a motel room is something of value. Antes testified he had been wondering the streets in search of places to ingest methamphetamine. Eventually, he remembered Hutton, and he knew where she was staying. While Antes did not pay for this particular motel room, Hutton, the registered guest, certainly did. And, Hutton's willingness to pay for a motel room and Antes's willingness to join her indicate the room had value to both of them. Consequently, it is illogical to argue a motel room is not something of value that can be exchanged during a drug transaction.

Antes cites an exhaustive list of cases demonstrating what has been considered something of value in other drug transactions. He asserts these cases mean that while an exchange of weapons, sex, or other tangible goods qualifies as something of value, an exchange of drugs for a motel room cannot be so characterized. The Attorney General adds that no published case has held an exchange of a motel room for drugs is sufficient to prove possession for sale. But the cases cited by Antes do not expressly or impliedly hold that the exchange of a motel room for drugs may never qualify as an exchange of drugs for something of value. In short, Antes's legal authority is of no precedential value here. (See *People v. Dunbar* (2012) 209 Cal.App.4th 114, 118 ["cases are not authority for issues they did not consider or decide"].)

Furthermore, the notion the jury must have found Antes exchanged drugs for a place to ingest them is tenuous. Antes had $215 and two bindles of methamphetamine in his wallet. Coupled with the methamphetamine found in the cosmetics bags, which a reasonable juror could have concluded also belonged to Antes, suggests he possessed the drug for the purpose of sales. Craig's testimony reasonably could be interpreted as supporting several factual scenarios. For instance, Antes could have been in the process of selling methamphetamine to Hutton and Valdivia in the traditional way, i.e., an exchange of drugs for money, or embarking on a sale in exchange for sex. Or Antes could have intended to sell methamphetamine to other people from the motel room and for cash. But regardless of which factual scenario the police officers saw, under no circumstances did the prosecutor's argument contain the assertion of a new and different legal theory.

In short, we conclude the prosecutor committed no misconduct, and we reject Antes's alternative ineffective assistance of counsel theory.

DISPOSITION

The judgment is affirmed.


                                    THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.