Filed 6/12/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>            v.<br><br>JESSE BANDA ORTEGA,<br><br>      Defendant and Appellant. | G063201<br><br>(Super. Ct. No. 00CF1418)<br><br>O P I N I O N |

      Appeal from an order of the Superior Court of Orange County, Jonathan S. Fish, Judge. Affirmed.

      Pauline E. Villanueva, under appointment by the Court of Appeal, for Defendant and Appellant.

      Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

"When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (Pen. Code, § 1170, subd. (d)(1)(A).) [1]

In 1996, Jesse Banda Ortega was 17 years old when he shot a gun at four people in a car. A jury found him guilty of one murder and three attempted murders. The court imposed a sentence of 25 years to life, plus 17 years. As originally sentenced, Ortega would not have been eligible for parole until 42 years after the date of his offenses (when he will be 59 years old).

However, the Legislature subsequently modified the timing of parole hearings for youthful offenders. (§ 3051.) As the operative statute now provides, an eligible defendant who committed his or her controlling offense before the age of 26 is eligible for a youth offender parole hearing starting at his or her 15th, 20th, or 25th year of incarceration. (§ 3051.)

In 2023, Ortega filed a section 1170 (d)(1) petition. Although Ortega's sentence is not LWOP, he claimed it is the functional equivalent of LWOP, and therefore under equal protection principles, he should be eligible for relief under the statute. The trial court denied the petition.

We agree with the court's ruling. By operation of law, Ortega "is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. Such a sentence is neither LWOP nor its functional equivalent." (See *People v. Franklin* (2016) 63 Cal.4th 261, 279–280 (*Franklin*).) Thus, we affirm the trial court's order.

---

[1] Further statutory references are to the Penal Code. We will generally omit the word subdivision. We will also generally refer to "life without the possibility of parole" as LWOP or life without parole.

## I.

## FACTS AND PROCEDURAL BACKGROUND

In August 1996, Ortega was involved in a gang-related shooting in Santa Ana when he was 17 years old. Ortega was a passenger in a car when he fired multiple shots at four people who were in another car. One of the four intended victims was shot in the heart and died. Another victim was shot in the back and survived.

In April 2001, the People filed an amended information charging Ortega with one count of murder, three counts of attempted murder, and related firearm enhancements.

In May 2001, a jury found Ortega guilty of the charged crimes, and found true the firearm enhancements. The trial court sentenced Ortega to a total aggregate sentence of 25 years to life, plus a determinate term of 17 years (effectively 42 years to life).

In September 2023, Ortega filed a petition seeking recall and resentencing. (§ 1170 (d)(1).)  The trial court summarily denied the petition in a written order. Citing *Graham v. Florida* (2010) 560 U.S. 48, 75 (*Graham*), the court found that Ortega "has 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' As such, Petitioner was not sentenced to the functional equivalent of LWOP and is therefore ineligible for relief."

In October 2023, Ortega filed a notice of appeal. [2]

---

[2] We take judicial notice that after Ortega filed the instant appeal, he was provided with a youth offender parole hearing. (See Evid. Code, §§ 452 (c), 459 (c) [an appellate court on its own motion may take judicial notice of the official acts of executive departments].) According to the California Department of Corrections and Rehabilitation's website, on September 19, 2024, Ortega was denied parole for five years.

II.

DISCUSSION

Ortega claims he is serving the functional equivalent of LWOP, and under constitutional principles, he should be permitted to submit a section 1170 (d)(1) petition for resentencing. We disagree. Ortega had a meaningful opportunity for release during his 25th year of incarceration; therefore, he is not serving the functional equivalent of an LWOP sentence.

This appeal involves issues of statutory interpretation and constitutional law, so our review is de novo. (*Raef v. Appellate Division of Superior Court* (2015) 240 Cal.App.4th 1112, 1120 ["The interpretation and constitutionality of a statute present issues of law"].)

In this discussion, we will: A) review the development of constitutional principles regarding youthful offenders; B) summarize how those principles have been statutorily implemented; and C) analyze and apply the various legal issues in this appeal.

*A. Constitutional Principles*

In July 2010, the United States Supreme Court found that an LWOP sentence imposed upon a juvenile defendant who did not commit a homicide offense violates the Eighth Amendment prohibition against cruel and unusual punishment. (*Graham*, *supra*, 560 U.S. at p. 82.) The Court held: "A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Id*. at p. 75.)

In June 2012, the United States Supreme Court expanded its

4

prior holding in *Graham*. (*Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*). In *Miller*, the Supreme Court now prohibited mandatory LWOP sentences for all juvenile defendants, regardless of what crime they may have committed, including capital murder. (*Id*. at p. 477.) The Court explained: "Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences." (*Ibid*.)

In August 2012, the California Supreme Court held that a sentence of 110 years to life for a juvenile convicted of attempted murder was unconstitutional because the defendant's parole eligibility date fell outside his natural life expectancy and was therefore the "functional equivalent" of an LWOP sentence. (*People v. Caballero* (2012) 55 Cal.4th 262, 268 (*Caballero*).) "Consistent with . . . *Graham*, . . . we conclude that sentencing a juvenile offender for a *nonhomicide* offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment." (*Ibid*., italics added.) The California Supreme Court later clarified that under *Miller*, its reasoning in *Caballero* also applied to homicide offenses. (See *Franklin, supra,* 63 Cal.4th at pp. 275–276.)

*B. Statutory Changes*

Effective January 1, 2013, the Legislature passed Senate Bill No. 9 (2011-2012 Reg. Sess.), adding section 1170 (d) to the Penal Code, which is the subject of this appeal. (Stats. 2012, ch. 828, § 1; § 1170, former subd. (d)(2)(A)–(J), now subd. (d)(1)–(13).) The enabling legislation "was inspired by concerns regarding sentences of life without parole for juvenile offenders." (*In*

5

*re Kirchner* (2017) 2 Cal.5th 1040, 1049.)

"When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to *imprisonment for life without the possibility of parole* has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170 (d)(1)(A), italics added.)

Section 1170 (d) generally "provides an avenue for juvenile offenders serving terms of life without parole to seek recall of their sentences and resentencing to a term that includes an opportunity for parole. This process is unavailable to a defendant sentenced to life without parole where it was pleaded and proved that the defendant tortured his or her victim, or that the victim was a public safety official, another law enforcement officer, or a firefighter." (*In re Kirchner, supra,* 2 Cal.5th at p. 1049, fn. omitted.)

In a section 1170 (d)(1) petition, the defendant must describe his or her remorse, relate his or her work toward rehabilitation, and state that a qualifying circumstance is true. (§ 1170 (d)(2).) "If the court finds by a preponderance of the evidence that one or more of the qualifying circumstances in the petition are true, the court must recall the defendant's sentence and hold a hearing to resentence the defendant." (*In re Kirchner, supra,* 2 Cal.5th at pp. 1049–1050.) At the resentencing hearing, the trial court may consider several factors listed in the statute, as well as "'any other criteria that the court deems relevant to its decision.'" (*Id.* at p. 1050.)

Effective January 1, 2014, the Legislature passed Senate Bill No. 260, which added section 3051 (youth offender parole hearings) and modified other provisions of the Penal Code. (Stats. 2013, ch. 312, § 4.) "The purpose of this act is to establish a parole eligibility mechanism that provides a person

serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in . . . *Caballero* . . . and the decisions of the United States Supreme Court in *Graham . . . ,* and *Miller . . . .* It is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established." (Stats. 2013, ch. 312, § 1.)

Section 3051 "requires the Board [of Parole Hearings] to conduct a 'youth offender parole hearing' during the 15th, 20th, or 25th year of a juvenile offender's incarceration. [Citation.] The date of the hearing depends on the offender's "'controlling offense,'" which is defined as 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.' [Citation.] A juvenile offender whose controlling offense carries a term of 25 years to life or greater is 'eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions.' [Citation.] The statute excludes several categories of juvenile offenders from eligibility for a youth offender parole hearing: those who are sentenced under the 'Three Strikes' Law [citation] or Jessica's Law [citation], those who are sentenced to life without parole, and those who commit another crime 'subsequent to attaining 23 years of age . . . for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison.'" (*Franklin, supra,* 63 Cal.4th at pp. 277–278.)

Also as a result of Senate Bill No. 260, section 4801 (c) now

7

provides: "When a prisoner committed his or her controlling offense . . . , when he or she was 25 years of age or younger, the [Parole] board, in reviewing a prisoner's suitability for parole . . . , shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."

*C. Application and Analysis*

The requirement of a youth offender parole hearing moots a juvenile defendant's constitutional claim that he is serving a sentence that is the functional equivalent of LWOP. (See *Franklin*, *supra*, 63 Cal.4th 261.) In *Franklin*, defendant Franklin was 16 years old when he shot and killed another teenager. The trial court imposed two consecutive 25-year-to-life sentences, meaning that Franklin was not eligible for parole until he was 66 years old. Franklin claimed that he was serving the functional equivalent of LWOP. But by the time the case made its way to the California Supreme Court, the Legislature had provided for youth offender parole hearings. (§ 3051.) Therefore, the threshold question on review was: "Does Penal Code section 3051 moot Franklin's constitutional challenge to his sentence by requiring that he receive a parole hearing during his 25th year of incarceration?" (*Id*. at p. 268.) The Court answered in the affirmative. (*Ibid*.)

"Penal Code sections 3051 and 4801—recently enacted by the Legislature to bring juvenile sentencing in conformity with *Miller, Graham*, and *Caballero*—moot Franklin's constitutional claim. Consistent with constitutional dictates, those statutes provide Franklin with the possibility of release after 25 years of imprisonment [citation] and require the [Parole

8

Board] to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity' [citation]. In light of this . . . , we need not decide whether a life sentence with parole eligibility after 50 years of incarceration is the functional equivalent of an LWOP sentence and, if so, whether it is unconstitutional in Franklin's case." (See *Franklin, supra*, 63 Cal.4th at p. 268.)[3]

The California Supreme Court noted: "The Legislature did not envision that the original sentences of eligible youth offenders would be vacated and that new sentences would be imposed to reflect parole eligibility during the 15th, 20th, or 25th year of incarceration." (*Franklin, supra,* 63 Cal.4th at p. 278.) "But section 3051 has changed *the manner in which the juvenile offender's original sentence operates* by capping the number of years that he or she may be imprisoned before becoming eligible for release on parole. The Legislature has effected this change by operation of law, with no additional resentencing procedure required." (*Id.* at pp. 278–279, italics added.) The Supreme Court likened section 3051 to a similar out of state statute that "had 'converted' juvenile offenders' sentences 'by the operation of the amended statutes' regardless of when those juveniles were originally sentenced, and that no judicial intervention was required to effectuate their

---

[3] While the Court found that Franklin's constitutional claim was mooted by the Legislative requirement of youth offender parole hearings, the Court also remanded the case for the purpose of ensuring Franklin had an "adequate opportunity . . . to make a record of mitigating evidence tied to his youth." (*Franklin, supra*, 63 Cal.4th at p. 269.) This has come to be known as a *Franklin* hearing, but the more accurate term is a *Franklin* proceeding. (*In re Cook* (2019) 7 Cal.5th 439, 449–450, fn. 3 ["*Franklin* processes are more properly called 'proceedings' rather than 'hearings'"].)

new parole eligibility." (*Id.* at p. 279.)

"In sum, the combined operation of section 3051 [and other statutory amendments] means that Franklin is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. Such a sentence is neither LWOP nor its functional equivalent. Because Franklin is not serving an LWOP sentence or its functional equivalent, no *Miller* claim arises here. The Legislature's enactment of Senate Bill No. 260 has rendered moot Franklin's challenge to his original sentence under *Miller.*" (*Franklin, supra,* 63 Cal.4th at pp. 279–280.)

Again, the statute at issue in this case provides: "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant *was sentenced to imprisonment for life without the possibility of parole* has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170 (d)(1)(A), italics added.)

Ortega filed a petition for recall and resentencing under section 1170 (d) after he had been incarcerated for at least 15 years. However, under the unambiguous language of the statute, Ortega was <u>not</u> "sentenced to imprisonment for life without the possibility of parole." (§ 1170 (d)(1)(A); *People v. Dunbar* (2012) 209 Cal.App.4th 114, 117 ["If the language is unambiguous, the plain meaning controls"].)

Nonetheless, Ortega argues that his 42-year-to-life sentence *with the possibility of parole*, is the functional equivalent of a life sentence *without the possibility of parole.* (See *People v. Caballero, supra,* 55 Cal.4th at p. 268.) And based on this Eighth Amendment (*Miller*) claim, he further argues a constitutional equal protection violation. That is, Ortega argues there is no

10

rational basis under section 1170 (d) for the difference in treatment between individuals who are serving LWOP sentences, as compared to those (such as him) who are serving the functional equivalent of an LWOP sentence. (See *People v. Hardin* (2024) 15 Cal.5th 834.)

But as in *Franklin*, Ortega's constitutional claim is moot. (See *People v. Alsafar* (2017) 8 Cal.App.5th 880, 883 [defendant's claim "of equal protection is now moot"].) Generally, a defendant's moot claims will not be addressed on the merits, since "it is a court's duty to decide ""actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."""" (*In re David B.* (2017) 12 Cal.App.5th 633, 644.)

Here, the trial court sentenced Ortega to life in prison with the possibility of parole after 42 years, which would have made him eligible for parole at age 59. But due to the Legislature's later enactment of section 3051, and its requirement of youth offender parole hearings, Ortega "is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. Such a sentence is neither LWOP nor its functional equivalent." (See *Franklin, supra,* 63 Cal.4th at pp. 279–280.) Of course, we are bound by California Supreme Court precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Therefore, we need not decide whether Ortega's 42-year-to-life sentence is the functional equivalent of LWOP, and, if so, whether it is unconstitutional, because his claim is moot. (See *Franklin, supra*, 63 Cal.4th at p. 268.)

In sum, we hold that the trial court properly denied Ortega's section 1170 (d) (1) petition because under the plain and unambiguous

11

language of the statute Ortega was not sentenced to life in prison without the possibility of parole. And we further hold that Ortega's constitutional equal protection claim is moot because he is not serving a sentence that is the functional equivalent of life in prison without the possibility of parole. (See *Franklin, supra,* 63 Cal.4th at pp. 279–280.)

Ortega argues that a recent published opinion compels a different result. (See *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*).) While we agree with part of the appellate court's analysis in *Heard*, we respectfully disagree with that portion of the opinion that Ortega is relying on.[4]

In *Heard*, defendant Heard was convicted of two counts of attempted murder, and one count of manslaughter. (*Heard*, *supra*, 83 Cal.App.5th at p. 612.) The crimes were committed when Heard was 16 years old. The trial court imposed an 80-year-to-life sentence, plus 23 years (effectively 103 years to life). After being incarcerated for 15 years, Heard petitioned for relief under section 1170 (d)(1). The trial court denied Heard's "petition, finding him ineligible for relief because he was not sentenced to an explicitly designated term of life without the possibility of parole." (*Ibid.*)

Heard made two claims on appeal. (*Heard*, *supra*, 83 Cal.App.5th at p. 612.) First, he claimed that section 1170 (d) "should be interpreted to apply not only to juvenile offenders sentenced to explicitly designated terms of life without parole, but also to a juvenile offender, like him, who has been sentenced to multiple terms that are the functional equivalent of life without

---

[4] For this reason, we are certifying this opinion for publication. "An opinion of a Court of Appeal . . . whether it affirms or reverses a trial court order . . . should be certified for publication in the Official Reports if the opinion: Addresses *or creates* an apparent conflict in the law." (Cal. Rules of Court, rule 8.1105(c)(5), italics added.)

parole." (*Ibid*.) Second, Heard claimed that "a contrary interpretation . . . would violate his constitutional right to equal protection of the laws." (*Ibid*.)

As far as Heard's first statutory interpretation claim, the appellate court rejected it. (*Heard, supra*, 83 Cal.App.5th at pp. 622–626.) The court quoted an established principle of statutory interpretation, which "'begins with the plain, commonsense meaning of the words in the statute.'" (*Id*. at p. 622.) Applying that principle, the appellate court held that "section 1170, subdivision (d)(1)(A), limits eligibility . . . to juvenile offenders sentenced to an explicitly designated life without parole term. The trial court's interpretation of the statute was correct, and it did not err in denying Heard's petition for recall and resentencing on this ground." (*Id*. at p. 626.) On this first claim, we agree with the appellate court's reasoning.

As far as Heard's second claim (the constitutional claim), the appellate court accepted it. (*Heard, supra*, 83 Cal.App.5th at pp. 631–634.) That is, the court held that Heard had received a de facto sentence of life without parole. (*Id*. at p. 629.) And the court further held that "there is no rational basis for making juvenile offenders sentenced to explicit terms of life without parole eligible for resentencing under section 1170, subdivision (d)(1), while denying the same opportunity to juvenile offenders sentenced to terms that amount to the functional equivalent of life without parole." (*Id*. at p. 631.) On this second constitutional claim, we respectfully disagree with the appellate court's analysis.

The *Heard* court explained its reasoning as follows: "It is true, as the People contend, that *Franklin* held that because the defendant had become eligible for a youth offender parole hearing in his 25th year of incarceration, he was no longer serving a life without parole sentence or its

functional equivalent. [Citation.] As our high court explained, this was the result of the retroactive operation of section 3051. [Citation.] The court further explained, however, that section 3051 did not alter the defendant's original sentence, which continued to remain binding." (*Heard, supra,* 83 Cal.App.5th at p. 629.) "Although under *Franklin*, Heard's sentence as it currently operates is no longer the functional equivalent of life without parole, this does not change the fact that the sentence *was* a de facto life without parole sentence at the time it was imposed. Because section 1170, subdivision (d)(1)(A), refers to the 'offense for which the defendant *was sentenced* to imprisonment for life without the possibility of parole' (italics added), and Heard was sentenced to the functional equivalent of a life without parole sentence, he is similarly situated with the juvenile offenders whose sentences make them eligible to seek resentencing." [5] (*Ibid.*)

We respectfully disagree because the appellate court's analysis in *Heard* cannot be reconciled with the Supreme Court's analysis in *Franklin*.

Again, at the time the sentence was imposed, Franklin "was sentenced" to 50 years to life in prison, making him ineligible for parole until he was 66 years old. (See *Franklin, supra*, 63 Cal.4th at p. 268.) And just as in *Heard,* Franklin argued that his sentence *was* the functional equivalent of LWOP under the holdings of *Graham*, *Miller*, and *Caballero*. (*Id.* at p. 282.) But the Supreme Court disagreed and held that because of the Legislature's

---

[5] Since the appellate court's decision in *Heard*, the Supreme Court has changed how equal protection claims are analyzed in California. (*People v. Hardin, supra,* 15 Cal.5th at pp. 850–851 ["courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review"].)

retroactive enactment of section 3051, and the requirement of a youth offender parole hearing during his 25th year of incarceration, Franklin's *current* constitutional claim was *now* moot. (*Id.* at p. 268.) It is true that under the provisions of section 3051, Franklin's 50-year-to-life sentence had not been vacated, but the Court held that "section 3051 has changed *the manner in which the juvenile offender's original sentence operates* by capping the number of years that he or she may be imprisoned before becoming eligible for release on parole." (*Id.* at pp. 278–279, italics added.) The Court also noted that a similar out of state "statute had '*converted*' juvenile offenders' sentences . . . , and that no judicial intervention was required to effectuate their new parole eligibility." (*Id.* at p. 279, italics added.)

The reasoning in *Franklin* necessarily applies in *Heard* (as it applies in this case). As in *Franklin*, Heard's constitutional claim was rendered moot by the Legislature's enactment of section 3051, and the *requirement* that he be given a youth offender parole hearing during his 25th year of incarceration (Heard was not in a category of offenders that would make him ineligible for relief under section 3051). (See *Franklin, supra,* 63 Cal.4th at pp. 277–278 [section 3051 "excludes several categories of juvenile offenders from eligibility for a youth offender parole hearing"].) [6]

---

[6] We note hypothetically that if Ortega was included in a category of juvenile offenders that would have excluded him from the possibility of a youth offender parole hearing, then that would take Ortega out of the ambit of the Court's holding in *Franklin*. If that were the case, then *perhaps* Ortega would be able to make a colorable argument that his current sentence of 42 years to life with the possibility of parole at age 59 is the functional equivalent of LWOP. (See *People v. Contreras* (2018) 4 Cal.5th 349, 378 ["we decline to resolve in this case whether the availability of an elderly parole hearing *at age 60* for a juvenile nonhomicide offender satisfies the Eighth Amendment concerns set forth in *Graham*"], italics added.)

Further, although Heard's sentence had not been vacated and he "was sentenced" to a term of 103 years to life, he was currently serving a sentence that has been *converted* to a life sentence with the possibility of parole after 25 years of incarceration (when he is 41 years old) by operation of law. (See *Franklin, supra,* 63 Cal.4th at p. 279.) As the *Heard* court noted, section 3051 is *retroactive*. In other words, and just as in *Franklin*, Heard was "*now serving* a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. *Such a sentence* is neither LWOP nor its functional equivalent." (*Id.* at pp. 279–280, italics added.)

To reiterate and conclude: "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant *was sentenced* to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170 (d)(1)(A, italics added).)

We find that the trial court properly denied Ortega's petition on two grounds. First, under the plain language of the statute, Ortega *was <u>not</u> sentenced* to life in prison without the possibility of parole. (See § 1170 (d)(1)(A).) And second, Ortega's equal protection claim is moot because under clear and binding precedent he *was <u>not</u> sentenced* to a prison term that *currently* violates the constitution (i.e., a sentence that is the functional equivalent of life in prison without the possibility of parole). (See *Franklin, supra,* 63 Cal.4th at pp. 279–280.)

## III.

## DISPOSITION

The trial court's order denying Ortega's petition for resentencing under section 1170 (d)(1), is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.